**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

AMANDA N. HOLLINGER,            :

    Plaintiff,            :

v.            :            CA 13-00565-C

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,            :

    Defendant.            :

<u>**MEMORANDUM OPINION AND ORDER**</u>

The Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for supplemental security income ("SSI") and disability insurance benefits ("DIB").  The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 17 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record ("R.") (doc. 12), the Plaintiff's brief (doc. 13), the Commissioner's brief (doc. 14), and the arguments presented at the October 9, 2014 hearing, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]    Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals.  (*See* doc. 17 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

## I.      Procedural Background

On or around December 18, 2007, the Plaintiff filed an application for SSI and DIB (R. 271-87, R. 320), alleging disability relating to the following ailments: irritable bowel syndrome, fibromyalgia, depression, polcystic ovary syndrome, fatigue, and diverticulitis. (R. 324.)  She stated that she became disabled on November 14, 2007.  (R. 283.)  Her application was initially denied on May 12, 2008.  (R. 155-64.)  A hearing was then conducted before an Administrative Law Judge (ALJ) on September 15, 2009.  (R. 41-77).  On September 25, 2009, the ALJ issued a decision finding that the claimant was not disabled.  (R. 139-50.)  On February 14, 2011, the Appeals Council remanded this matter back to the ALJ for further proceedings.  (R. 152-54.)  Additional hearings were held before the ALJ on June 7, 2011, (R. 78-116), and January 11, 2012, (R. 117-33).  On March 22, 2012, the ALJ issued a second decision finding that the claimant was not disabled.  (R. 19-34.)  The Plaintiff sought review from the Appeals Council, (R. 14), and the Appeals Council issued a decision declining to review the ALJ's decision, (R. 1-3).  Therefore, the ALJ's March 22, 2012 determination was the Commissioner's final decision for purposes of judicial review.  *See* 20 C.F.R. § 404.981.  The Plaintiff filed a Complaint in this Court on November 18, 2013.  (Doc. 1.)

## II.      Standard of Review and Claims on Appeal

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work.  *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history.  *Id.*  Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or

her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step "the [plaintiff] bears the burden of demonstrating an inability to return to his [or her] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny Plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 F. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, the Plaintiff asserts that the ALJ reversibly erred by failing to give controlling weight to the opinion of Dr. Ellis Allen, her primary care physician, and the opinion of Ms. Selena Steade and Ms. Yvonne Ambrose, the Plaintiff's nurse practitioner and mental health counselor involved in her mental health

treatment.[2][3]  (Doc. 13 at 2.)   For the reasons discussed below, the Commissioner's decision denying the Plaintiff benefits should be affirmed.

### III.   ALJ's Decision

On March 22, 2012, the ALJ issued a decision finding that the Plaintiff was not disabled.  (R. 19-34.)  In reaching her decision, the ALJ found that the Plaintiff was not engaged in substantial gainful activity following November 14, 2007, the alleged onset date.  (R. 21.)  The ALJ found that the Plaintiff "has the following severe impairments: fibromyalgia, neuropathy, history of abdominal surgeries for polycystic ovary syndrome and colostomy, irritable bowel syndrome, hypothyroidism, bipolar disorder, and anxiety."  (R. 21-22 (emphasis omitted).)  The ALJ concluded that the Plaintiff did not meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.  (R. 25.)  The ALJ made the following findings with respect to the Plaintiff's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to standing and walking for no more than 30 minutes at a time and no more than 3 hours total during an 8 hour workday.  She is limited to occasional overhead reaching, bending, crouching, crawling, stooping, and kneeling. She is unable to work around unprotected heights or dangerous equipment.  She may need to take 1-2 quick (*i.e.* less than 5 minutes) bathroom breaks throughout the workday in addition to normal breaks.

---

[2]    The ALJ mistakenly referred to the Plaintiff's mental health counselor as "Yvonne Anderson."  (R. 25.)  The ALJ apparently misread her handwritten name.  Based on the undersigned's reading of her name, it is Yvonne Ambrose.  (*See id.*)

[3]    The Plaintiff does not argue specifically that the ALJ erred with respect to the weight given to Ms. Ambrose's opinion.  (*See* doc. 13.)  The Plaintiff only refers to the Plaintiff's nurse practitioner and cites to the Mental Residual Functional Capacity Questionnaire ("MRFC").  (*Id.* at 2, 4.)  However, Ms. Ambrose and Ms. Steade, the nurse practitioner, both signed the MRFC.  (R. 704-05.)  The ALJ attributed the MRFC to both individuals, (R. 25), and the undersigned does as well.

> She should avoid work requiring complex or detailed instructions. She is
> unable to work in crowds and is limited to occasional public contact.

(R. 27 (emphasis omitted).) Based on the testimony of the vocational experts, the ALJ concluded that the Plaintiff was not capable of performing past relevant work, but that the Plaintiff can perform other jobs that exist in significant numbers. (R. 32.)

## IV.   Analysis

### A. The ALJ did not err by failing to give controlling weight to the opinion of Dr. Allen, the Plaintiff's primary care physician.

On March 11, 2011, Dr. Allen completed a Clinical Assessment of Fatigue form (R. 629) and a Clinical Assessment of Pain form (R. 630-31) for the Plaintiff. In the Clinical Assessment of Fatigue form, Dr. Allen opined that the Plaintiff's weakness, fatigue and pain limit the Plaintiff to working less than eight hours a day. (R. 629.) He concluded that "[f]atigue is present to such an extent as to be distracting to adequate performance of daily activities or work" and "physical activity such as walking or standing . . . [g]reatly increased fatigue to such a degree as to cause distraction from tasks or total abandonment of tasks." (*Id.*) In the Clinical Assessment of Pain form, Dr. Allen stated that "[p]ain will distract the patient from adequately performing daily activities or work." (R. 630.) However, he determined that "physical activity, such as walking, standing, bending, stooping, moving of the extremities, etc.," will lead to "[s]ome increase [in pain] but not to such an extent as to prevent adequate functioning in such tasks." (*Id.*) Dr. Allen also concluded that "[p]ain and/or drug side effects can be expected to be severe and to limit [her] effectiveness [at her previous work] due to distraction, inattention [and] drowsiness." (R. 631.) He stated that the Plaintiff's daily activities, such as lifting, standing, pulling and straining, would be limited. (*Id.*) Dr. Allen identified the condition causing the Plaintiff's pain as "chronic pain/neuropathy" and stated that his diagnosis is supported by "[her] hospitalization in 2008 for surgery

with adverse outcomes."  (R. 630.)  He further stated that, due to her condition, the

Plaintiff will need to be treated with oral pain medications and physical therapy.  (R.

631.)

In addition, Dr. Allen sent a letter to the Plaintiff's attorneys providing the

following statement:

> [The Plaintiff] is a patient of mine with multiple medical problems,
> including hypothyroidism, polycystic ovary disease, hypertension,
> chronic bronchitis, asthma, type II diabetes, chronic neck pain and
> peripheral neuropathy.  She suffers from chronic pain and requires
> medication for this on a daily basis.  Her chronic illness and pain has
> made her anxious and depressed and she requires medication for this as
> well.

(R. 752.)

As the plaintiff's treating physician, Dr. Allen's opinions "must be given

substantial or considerable weight unless 'good cause' is shown to the contrary."

*Gilabert v. Comm'r of Soc. Sec.*, 396 F. App'x 652, 655 (11th Cir. Sept. 21, 2010) (per

curiam) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Good cause is

shown when the: "(1) treating physician's opinion was not bolstered by the evidence;

(2) evidence supported a contrary finding; or (3) treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records."  *Id.* (quoting *Phillips*

*v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).  Where the ALJ articulate[s] specific

reasons for failing to give the opinion of a treating physician controlling weight, and

those reasons are supported by substantial evidence, there is no reversible error.  *Id.*

(quoting *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)]).

Here, the ALJ gave little weight to Dr. Allen's opinions regarding the Plaintiff's

physical abilities because the ALJ found that Dr. Allen's pain assessment is internally

inconsistent and because Dr. Allen's opinions are inconsistent with his own treatment

notes and the other evidence of the Plaintiff's actual activity level.  (R. 31.)  On appeal,

the Plaintiff argues that Dr. Allen's opinions should have been given controlling weight. (Doc. 13 at 4.)  However, the Plaintiff failed to advance any argument as to whether the ALJ had good cause to discount Dr. Allen's opinions for the aforementioned reasons. (*See* doc. 13.)   Notably, the Plaintiff's brief includes no discussion of Dr. Allen's treatment notes or the other evidence of record regarding the Plaintiff's physical abilities.  (*See id.*)

The undersigned finds that the ALJ had good cause to give little weight to Dr. Allen's opinions because Dr. Allen's conclusions regarding the Plaintiff's ability to work are inconsistent with his own treatment notes.  As indicated by the following summary of Dr. Allen's records, his minimal findings and conservative treatment fail to support his opinions regarding the Plaintiff's ability to work.

On February 12, 2008, the Plaintiff visited Dr. Allen with complaints that she was experiencing neuropathic pain and fibromyalgia since recently undergoing surgery.[4] (R. 537-38.)  Dr. Allen noted that the Plaintiff recently underwent a colostomy, and he prescribed Lyrica for her pain.  (*Id.*)  Dr. Allen saw the Plaintiff on several occasions in 2008 and 2009.  (R. 652-63.)  During that period, physical examinations of the Plaintiff were normal, (*id.*), and Dr. Allen noted that the Plaintiff was doing well following her colostomy reversal, (R. 658).  However, the Plaintiff continued to have neck and back pain, (R. 652-63), and Dr. Allen continued to prescribe pain medication to treat her pain, (*id.*).  On June 2, 2010, the Plaintiff visited Dr. Allen for a follow up regarding her chronic neuropathy.  (R. 650-51.)  Her physical examination was normal, and Dr. Allen

---

[4]        The Plaintiff has a history of multiple abdominal surgeries.  (*See* R. 476.)  Most recently, in November 2007, the Plaintiff underwent abdominal surgery involving the lysis of adhesions and the removal of a 19 cm segment of her sigmoid colon that was perforated and damaged from diverticulitis.  (R. 470-79; R. 681.)  A temporary colostomy was performed, and the colostomy was closed during a subsequent surgery on July 7, 2008.  (R. 673-74.)

noted that she was doing well with her pain medications, which included Oxycodone and Lyrica.   (R. 650.)   Dr. Allen diagnosed the Plaintiff with an unspecific "inflammatory/toxic neuropathy" condition, and ordered that the Plaintiff begin taking Gabapentin instead of Lyrica because she reported side effects with Lyrica.  (R. 651.) On September 9, 2010, the Plaintiff visited Dr. Geoffrey Lipscomb, another physician in Dr. Allen's practice group.  (R. 648-49.)  The Plaintiff did not report any complaints related to pain or neuropathy at that time, and Dr. Lipscomb did not mention pain or neuropathy in his notes.  (*Id.*)  On September 17, 2010, the Plaintiff returned to see Dr. Lipscomb and reported that she was experiencing neck pain and stiffness after a recent motor vehicle accident in which her vehicle hit a horse.  (R. 646-47.)  Dr. Lipscomb found that the Plaintiff had good range of motion in her neck, but that she had neck pain and stiffness.  (*Id.*)  On November 5, 2010, the Plaintiff returned to see Dr. Allen with complaints of neck pain and numbness in her fingers and hand following her motor vehicle accident.  (R. 644-45.)  Her physical examination was normal, as was an x-ray of her cervical spine, though it was noted that her spine could not be visualized on the x-ray image at C6-7.   (*Id.*; R. 666.)  Dr. Allen ordered an MRI, but there is no evidence that the MRI was performed.  (R. 645; *see* R. 642-43.)  On February 14, 2011, the Plaintiff returned to see Dr. Allen with complaints of a respiratory infection.  (R. 642-43.)  The Plaintiff also reported fatigue and pain in her back and in her joints.  (*Id.*) Other than findings related to her respiratory infection, her physical examination was normal.  (*Id.*)  However, Dr. Allen noted that she continued to have neck pain and advised her to continue taking her pain medications.  (*Id.*)  On May 13, 2011, the Plaintiff returned to see Dr. Allen.  (R. 743-44.)  She reported having back pain, and Dr. Allen renewed her pain medications, but her physical examination was normal, and Dr. Allen made no findings or diagnoses related to pain or neuropathy.  (*Id.*)  The last office

visits with Dr. Allen documented in the record were on August 11, 2011, October 13, 2011, and November 28, 2011.  (R. 737-42.)  Dr. Allen continued her pain medications during those visits; however, the Plaintiff reported no complaints of pain or neuropathy, and Dr. Allen made no findings or diagnoses regarding pain or neuropathy.  (*Id.*)  At the time of the October 13, 2011 visit, the Plaintiff specifically denied having any fatigue and denied having any gastrointestinal or genitourinary problems.  (R. 739.)  At the time of the November 28, 2011 visit, the Plaintiff reported having fatigue after being hospitalized for an episode of asthma, but Dr. Allen noted that she was doing much better.  (R. 737.)

The undersigned agrees with the ALJ that Dr. Allen's treatment notes do not support the severe limitations described by Dr. Allen in the pain and fatigue assessments he completed.[5]  As stated by the ALJ, "if the claimant's ability to function were as limited as Dr. Allen suggests, he would have formulated a more aggressive treatment plan; instead, he basically monitors medications."  (R. 31.)  Absent from Dr. Allen's treatment notes is any discussion regarding the Plaintiff's purported inability to cope with her pain and fatigue, nor is there any discussion regarding restrictions placed on her ability to work or her activities of daily living.

In fact, the Plaintiff's own reports indicate that her activity level is not severely limited.  The Plaintiff lives alone in a mobile home on her parents' property, she drives a car and takes care of her dogs.  (R. 83, 98-99, 351.)  She stated that she can manage activities of daily living, including cooking, cleaning, washing dishes and washing her

---

[5]     The undersigned also notes that Dr. Allen did not perform any examination in conjunction with the pain and fatigue assessments he completed.  (*See* R. 629-31.)  Furthermore, Dr. Allen's assessments are vague and conclusory in that he identifies the condition causing the Plaintiff's pain as "chronic pain/neuropathy."  (R. 630.)

clothes.  (R. 708.)  However, she needs help moving laundry bags.  (R. 350.)  She stated

that she goes on short walks everyday and goes to yoga once or twice a week.  (R. 728.)

She also plays in a pool league and goes shopping once or twice a week.  (R. 351, 571.)

Given this evidence, the undersigned also agrees with the ALJ that Dr. Allen's opinions

are inconsistent with the Plaintiff's activity level.[6]

For the foregoing reasons, the undersigned finds that the ALJ did not err by

giving little weight to Dr. Allen's opinions.

### B. The ALJ did not err by failing to give controlling weight to the opinions of Nurse Practitioner Steade and Mental Health Counselor Ambrose.

On June 6, 2011, Ms. Steade, one of the Plaintiff's treating nurse practitioners,

and Ms. Ambrose, one of the Plaintiff's mental health counselors, completed an MRFC

setting forth their opinions as to the extent that the Plaintiff's mental impairments

would limit her in the workplace.  (R. 704-05.)  They estimated that the Plaintiff's

activities of daily living were mildly restricted; that maintaining social functioning was

markedly difficult; and that she frequently had "deficiencies in concentration

persistence or pace resulting in failure to complete tasks in a timely and appropriate

manner."  (R. 704.)  They also expected that she would have four or more "episodes of

decomp[ensation][7] in work or work-like settings which cause the individual to

withdraw from that situation or to experience exacerbation of signs and symptoms for a

period lasting at least 2 weeks."  (*Id.*)  They concluded that the Plaintiff was moderately

---

[6]     The evidence of the Plaintiff's activity level is more consistent with the opinions of Dr. Thomasina Anderson-Sharpe, the consultative examiner who found that the Plaintiff was somewhat limited by pain and fatigue, but not to the extent described by Dr. Allen.  (*See* R. 707-17.)  The ALJ gave substantial weight to Dr. Anderson-Sharpe's opinions and found that they reflected that the Plaintiff should be limited to light work.  (R. 30.)

[7]     Ms. Steade and Ms. Ambrose's MRFC includes the word "decomposition."  (R. 704.  However, the undersigned presumes that their intended meaning is decompensation.

limited in her ability to perform simple tasks and repetitive tasks; that she was markedly limited in her ability to respond appropriately to supervision, co-workers and customary work pressures, and in her ability to complete work related activities in a normal workday or workweek; and that she was extremely limited in her ability to understand, carryout and remember instructions.  (R. 704-05.)  Notably, a psychological evaluation was not obtained in conjunction with their assessment.  (R. 705.)

The Plaintiff argues that the ALJ was required "to give controlling weight to the opinions of the Plaintiff's treating medical professionals" and, therefore, the ALJ erred by failing to give controlling weight to Ms. Steade and Ms. Ambrose's assessment. (Doc. 13 at 2.)  However, the Plaintiff's understanding of the law is incorrect.  As discussed above, the opinion of a treating *physician* is entitled to substantial weight *unless* the ALJ has good cause to afford that opinion less weight.  *See supra* § IV.A.  Ms. Steade and Ms. Ambrose are not treating physicians.  Ms. Steade is a nurse practitioner, and Ms. Ambrose is a mental health counselor.  (R. 705.)  Nurse practitioners and mental health counselors are not entitled to the deference given treating physicians.  *See Jones v. Colvin*, No. 3:13-cv-114-J-JRK, 2014 WL 1207357, at *5 (M.D. Fla. Mar. 24, 2014) ("[M]ental health counselors are not listed as acceptable medical sources for the purpose of establishing an impairment, see 20 C.F.R. §§ 404.1513(a), 416.913(a), and their opinions are not entitled to deference."); *Butler v. Astrue*, No. CA 11-00295-C, 2012 WL 1094448, at *2-3 (S.D. Ala. Mar. 30, 2012) ("[A] nurse practitioner's opinion is considered 'other source' evidence, and is not given the same controlling weight as a 'treating source." (citation omitted)); *Hammond v. Astrue,* No. 3:10-CV-24 (CDL), 2011 WL 2581955, *2 (M.D. Ga. Jun. 1, 2011) ("Although a treating physician's opinion is to be accorded great weight and deference, unless good cause is shown to the contrary, an

opinion from a treating source such as a nurse practitioner is not entitled to the same weight."). As the court in *Hammond* explained:

> Social Security Ruling 06–3p establishes that "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06–3p. "Acceptable medical sources" are defined in the regulations as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). Nurse practitioners are defined as "other sources". 20 C.F.R. § 416.913(d)(1). "[W]hile the ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue,* 298 Fed. Appx. 105, 108 (2nd Cir. 2008).

(*Id.*) While the opinions of "other sources," such as nurse practitioners and mental health counselors, are not entitled to deference, generally the ALJ "should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case." *Butler,* 2012 WL 1094448, at *3 (citing SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)).

Here, the ALJ considered Ms. Steade and Ms. Ambrose's MRFC, (R. 25), and evaluated it in conjunction with the Plaintiff's mental health treatment notes, (R. 22-25), which show that the Plaintiff "has been treated for bipolar disorder and anxiety" and that "[s]he receives medication management and counseling," (R. 31). After considering all the evidence, the ALJ found that Ms. Steade and Ms. Ambrose's assessment was not persuasive. (R. 31.) The ALJ stated that

> the assessment completed by Ms. Steade and Ms. A[mbrose] is at odds with and unsupported by the Mental Health treatment notes, which do not suggest limitations that are any more than moderate in degree. Moreover, the balance of the evidence and the claimant's own reported activity level tend to discredit the stated limitations. Based on the record as a whole, I find that the claimant should avoid work requiring complex or detailed instructions, that she is unable to work in crowds, and that she

is limited to occasional public contact. These limitations are more consistent with the presentation suggested by Mental Health progress notes and the claimant's self-reported activities.

(*Id.*)

Because Ms. Steade and Ms. Ambrose are not treating physicians, the ALJ did not err by failing to afford their opinions controlling weight. The ALJ sufficiently discussed Ms. Steade and Ms. Ambrose's assessment, finding it unpersuasive because it is unsupported by the treatment notes and the Plaintiff's own reports of her activity level. (R. 31.) Therefore, the undersigned is able to follow the ALJ's reasoning and concludes that it is based on substantial evidence.[8]

---

[8]    For example, Ms. Steade's August 16, 2011 treatment note—her only treatment note in the record—includes a mental status examination with findings that do not suggest marked and extreme limitations. (*See* R. 728.) Ms. Steade's findings from that examination are as follows:

> This is a well-developed, well-nourished, overweight Caucasian female. She is neat and clean. Her hair is combed. Posture and gait are appropriate and WNL. Her attire is casual and appropriate to season. She is wearing a blouse and jeans.
>
> Her demeanor is cooperative, friendly, open, interested, and engaged.
>
> Sleep: "Not good." Appetite: "Not good." She is awake, alert, and oriented to person, place, time, and situation.
>
> Speech is regular rate and rhythm; it is spontaneous, responsive, and productive, with no evidence of pressure or push. Thought processes and content are coherent, logical, and goal-directed. There was no evidence of loose associations, flight of ideas, circumferential, or tangential reasoning. No blocking evident. No delusions noted. She denied abnormal perceptions such as auditory or visual hallucinations. She denied paranoia. There was no evidence of delusions. No persecutory thoughts or grandiosity noted. She denied any suicidal or homicidal ideations.
>
> When asked to describe her mood, she replied, "Tired." Observed mood was somewhat dysthymic. Her affect was constricted and congruent to expressed mood. There was no evidence of abnormal motor activity such as EPSE or TD. Insight and judgment were fair and intact.

(*Id.*) Prior to that visit, the Plaintiff was last seen on April 16, 2010, by a different nurse practitioner, Donna Swearingen, whose findings were relatively mild. (R. 637; *see* R. 728.)

Because the Plaintiff raises no other issues, and because substantial evidence of record supports the Commissioner's determination that the Plaintiff can perform the physical and mental requirements of a reduced range of light work as identified by the ALJ, (R. 27), the Commissioner's determination is due to be affirmed.  *See Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 48 (11th Cir. Oct. 26, 2012) ("'The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits.'"); *Conner v. Astrue,* 415 F. App'x 992, 995 (11th Cir. Feb. 28, 2011) ("An individual who files an application for Social Security Disability and Supplemental Benefits must prove that she is disabled."); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 223 (11th Cir. May 2, 2007) ("[T]he burden lies with the claimant to prove her disability.").

## V.    Conclusion

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying the Plaintiff benefits be **AFFIRMED**.

**DONE and ORDERED** this the 31st day of March 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

Specifically, Ms. Swearingen found that the Plaintiff was "[a]lert and oriented," her "[m]ood [was] euthymic," and her "[t]houghts [were] logical."  (R. 637.)  "Mild anxiety [was] noted," but she was in "no acute distress."  (*Id.*)